1  **BURSOR & FISHER, P.A.**
   L. Timothy Fisher (State Bar No. 191626)
2  Joel D. Smith (State Bar No. 244902)
   1990 North California Blvd., Suite 940
3  Walnut Creek, CA 94596
   Telephone: (925) 300-4455
4  Facsimile: (925) 407-2700
   E-Mail:  ltfisher@bursor.com
5           jsmith@bursor.com

6  **BURSOR & FISHER, P.A.**
   Scott A. Bursor (State Bar No. 276006)
7  701 Brickell Avenue, Suite 1420
   Miami, FL 33131
8  Telephone: (305) 330-5512
   Facsimile: (305) 676-9006
9  E-Mail: scott@bursor.com

10 *Attorneys for Plaintiff*

11

12                    **UNITED STATES DISTRICT COURT**

13                    **EASTERN DISTRICT OF CALIFORNIA**

14

15 SHARI VANCE, on Behalf of Herself and all        Case No. 2:22-cv-00044-MCE-KJN
   Others Similarly Situated,
16                                                   **FIRST AMENDED CLASS ACTION**
                          Plaintiff,                 **COMPLAINT**
17
         v.
18                                                   **JURY TRIAL DEMANDED**
   CHURCH & DWIGHT CO., INC.
19
                          Defendant.
20

21

22

23

24

25

26

27

28

Plaintiff Shari Vance ("Plaintiff"), by her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## NATURE OF ACTION

1.      This is a class action against Church & Dwight Co., Inc. ("Defendant") for false and deceptive representations that the over-the-counter ("OTC") homeopathic remedy Zicam, which it represents as "The Pre-Cold Medicine," prevents, shortens, and reduces the severity of the symptoms of the common cold when, in fact, the products have no impact on cold symptoms.  The Pre-Cold Medicine  products at issue here are Zicam brand Original RapidMelts®, Ultra RapidMelts®, Oral Mist, Wild Cherry Lozenges, Medicated Fruit Drops, Elderberry Citrus RapidMelts®, and Elderberry Medicated Fruit Drops ("Pre-Cold Products").

2.      Defendant uniformly represents on Zicam Pre-Cold Product labels the following false and deceptive statements:

- That each Zicam Pre-Cold Product "reduces duration of the common cold," and "reduces severity of cold symptoms ▪ sore throat ▪ stuffy nose ▪ sneezing ▪ coughing ▪ nasal congestion."
- That each Zicam Pre-Cold Product is a "COLD REMEDY" that "SHORTENS COLDS."
- That each Zicam Pre-Cold Product is a "Pre-Cold Medicine" that users should "TAKE AT THE FIRST SIGN OF A COLD"

3.      As Defendant's sales pitch goes, "Zicam is ***completely different*** from most other cold remedies because it actually shortens colds versus just temporarily relieving symptoms.  These [products], made with zinc, shorten colds when taken at the first sign."  (Emphasis in original).  Further, Zicam hails itself as the "#1 cold shortening product in the USA."  According to Zicam, it enjoys the position as "the Pre-Cold medicine leader."

4.      Since the Pre-Cold Products are no more effective than a placebo, they do not prevent colds from occurring, do not "reduce[] duration of the common cold," and do not "reduce[] severity of cold symptoms ▪ sore throat ▪ stuffy nose ▪ sneezing ▪ coughing ▪ nasal congestion."

5.      As a direct and proximate result of Defendant's false and misleading advertising claims and marketing practices, Plaintiff and the members of the Class and subclasses, as defined herein, purchased Defendant's ineffective Pre-Cold Products.  Plaintiff and the members of the Class purchased the Pre-Cold Products because they were deceived or confused into believing that the Products shorten or reduce the severity of the common cold.  As a result, Plaintiff and members of the Class purchased Zicam Pre-Cold Products that were not effective and have been injured in fact.  Plaintiff and the Class Members have suffered an ascertainable and out-of-pocket loss. Plaintiff and members of the Class seek a refund and/or rescission of the transaction and all further equitable and injunctive relief as provided by applicable law.

6.      Plaintiff seeks relief in this action individually and on behalf of all purchasers of Zicam Pre-Cold Products for breach of express and implied warranties; violations of the California Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq*., California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq*., and California's False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq.*; and for unjust enrichment.

## THE PARTIES

7.      Plaintiff Shari Vance is and was at all times relevant to this complaint domiciled in California and a resident of Roseville, California.

8.      During part of the class period, Zicam Pre-Cold Products were made, marketed, and distributed by Matrixx Initiatives, Inc., and its wholly owned subsidiary Zicam LLC.  However, Defendant Church & Dwight Co. Inc. claims that it is "the successor company, by way of merger, of … Zicam LLC and Matrixx Initiatives, Inc."  Church & Dwight is a Delaware corporation with its headquarters in New Jersey.

9.     Defendant produces, markets, and sells homeopathic products throughout the United States, including the Zicam Pre-Cold Products.  Defendant has long maintained substantial distribution and marketing operations in California, and in this District.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)  because there are more than 100 Class Members, the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class Member is a citizen of a state different from at least one Defendant.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does business throughout this District, Plaintiff purchased Zicam in this District, and the Products that are the subject of the present Complaint are sold extensively in this District.

12.     This Court has personal jurisdiction over Defendant because they conduct substantial business within California, including the sale, marketing, and advertising of the Pre-Cold Products.  A substantial portion of the events giving rise to Plaintiff's claims occurred in this State, including Plaintiff's purchase.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

13.     **Products At Issue**: The Products at issue include Zicam brand Original RapidMelts®, Ultra RapidMelts®, Oral Mist, Wild Cherry Lozenges, Medicated Fruit Drops, Elderberry Citrus RapidMelts®, and Elderberry Medicated Fruit Drops ("Pre-Cold Products"), all of which are substantially similar as they each claim to be a homeopathic remedy with the active ingredients zincum aceticum and zincum gluconicum that shorten colds.

14.     **Relevant Time Period**:  All of the misrepresentations at issue here were uniformly and consistently made at all times during the last four years, at least.  There have been no material changes to the product packaging during the relevant period.

15.     **Misrepresentations At Issue**:  During the entire relevant period, each Pre-Cold Product has included the same statements on the product packaging:

- That each Zicam Pre-Cold Product "reduces duration of the common cold," and "reduces severity of cold symptoms ▪ sore throat ▪ stuffy nose ▪ sneezing ▪ coughing ▪ nasal congestion."

- That each Zicam Pre-Cold Product is a "COLD REMEDY" that "SHORTENS COLDS."

- That each Zicam Pre-Cold Product is a "PRE-COLD MEDICINE" that users should "TAKE AT THE FIRST SIGN OF A COLD."

- The product directions instruct users to "use at the first sign of a cold and continue to use until symptoms completely subside," which in the context of the packaging as a whole further reinforces this misimpression that the Pre-Cold Products will treat the symptoms or duration of a cold.

16.    The following are examples of the uniform packaging of Zicam Original RapidMelts®, Ultra RapidMelts®, Elderberry Citrus RapidMelts®, Wild Cherry Lozenges, and Oral Mist:

  

 

17.     The following are examples of the uniform packaging of Medicated Fruit Drops and Elderberry Medicated Fruit Drops:

 

18.     Each consumer who has purchased the Zicam Pre-Cold Products has been exposed to Defendant's misleading advertising.

19.     The above-described misrepresentations are material to consumers, who purchase Pre-Cold Products to obtain the advertised cold symptom relief, which the products cannot provide.

20.     **How/Why Misleading:** All of the misrepresentations at issue here have the tendency or capacity to deceive or confuse reasonable consumers into believing that the Zicam Pre-Cold Products will **"**reduce[] the duration of the common cold" and "reduce[] the severity of cold symptoms," or otherwise provide medicinal benefits with respect to colds.  In fact, the Pre-Cold Products do not do that: they are no more effective than a placebo.

21.     Defendant deliberately and intentionally made uniform false and deceptive labeling claims about the Pre-Cold Products.  Defendant spent a significant amount of time, thought, and money developing and implementing its marketing strategy to create a unified, homogenous look for its Pre-Cold Products.  Defendant partnered with design firm Beardwood&Co to design the

packaging for Zicam products.  Julia Beardwood, a principal at Beardwood&Co, explained, "[Zicam] helped define [the pre-cold] segment… But to be successful, we had to help consumers quickly sort through this myriad of products in the cold aisle and understand what Zicam is and when to take it."  For example, "[t]o help educate consumers," the Zicam packaging was re-designed to feature a "Pre-Cold seal in the shape of a bulls-eye."  This serves as a "unifying element that communicates preparedness and reassurance."

22.    Zicam's Senior Vice President of Marketing, Leslie Malloy, also expressed that Pre-Cold seal is a "big advantage."  She said, "It positions us as leaders in this category with a strong central unifying element that has badge value for consumers and empowers them to do something when they feel the first signs of a cold."  Defendant extended the Pre-Cold seal into all its marketing platforms, including online and in-store displays.  This indicates Zicam is well-aware that consumers rely on the representations asserted on product packaging when considering a cold product.

23.    Studies show that zinc lozenges are no more effective than a placebo.  For example, in 2007, Thomas J. Caruso, Charles G. Prober, and Jack M. Gwaltney, Jr. conducted a structured review of studies that examined the efficacy of zinc lozenges, nasal sprays, and nasal gels as treatment for the common cold.   Dr. Caruso and Dr. Prober are both Professors at the Stanford School of Medicine.  Dr. Gwaltney is a renowned professor from the University of Virginia School of Medicine.  The review's analysis of studies on zinc lozenges is especially pertinent to Zicam's Pre-Cold Products because the lozenge is the delivery form of Defendant's flagship Pre-Cold Products - RapidMelts, and RapidMelts Ultra.

24.    The Caruso review evaluated the zinc studies against eleven predetermined criteria necessary for a valid experimental design.  See Caruso Review at 570.  The absence of any one of these criteria could potentially invalidate a study.  Id.

25.    Caruso et al. found that only two of the examined zinc lozenge studies met all eleven criteria for a valid experimental design.  Id. at 571.  Notably, both of these studies, Macknin, Piedmonte, et al., 1998 (the "Macknin Study") and Turner, Cetnarowski, 2000 (the

"Turner Study") reported that zinc lozenges have no effect on the symptom severity and duration of common cold.  Id.

26.     The Macknin Study concluded zinc lozenges were "not effective in treating cold symptoms."   The Macknin Study was a randomized, double blinded, and placebo-controlled 249-person study that satisfied all of the 11 criteria identified by Caruso et al. as "necessary for valid experimental design."  See Caruso R note 13, at 571 ("Among the 7 studies reporting no effect, 3 fulfilled all criteria," including the Macknin study).  The authors found that:  (1) the time to resolve all cold symptoms was identical in the placebo and zinc lozenge groups; (2) zinc Lozenges had "no significant effect on the time for resolution on any of the individual symptoms"; (3) differences in school absences between the groups were not statistically significant; and (4) slightly more students in the zinc lozenge group experienced at least one adverse effect than in the placebo group.

27.     The Turner Study likewise found that zinc lozenges "had no effect on the duration or severity of symptoms in either the experimental or natural study model" and "zinc compounds appear to have little utility for common-cold treatment."   The Turner Study was a double-blind, randomized, placebo-controlled study on the effect of zinc treatment on the duration of severity of common-cold symptoms using zinc lozenges, and placebo lozenges.  Like the Macknin Study, the Turner Study met all 11 criteria set forth in the Caruso Review.  See Caruso Review note 13, at 571.

28.     The prestigious Mayo Clinic agrees with the findings of the Caruso Review.  In a consumer guide to effective cold treatments, the Mayo Clinic includes zinc in a long list of ineffective cold remedies. The Clinic Staff further noted, "… the highest quality randomized trials generally show no benefit [from zinc treatment]."  Id.

29.     Additionally, the Caruso Review also noted many of the reviewed studies failed to prove effective blinding of participants.  See Caruso Review at 572-73.  If there is no effective blinding, the placebo effect could explain any positive test results because participants in the experimental group will expect relief and participants in the control group will expect no relief.

This is especially true in the context of zinc lozenges used to treat the common cold.  The common cold is particularly susceptible to the influence of the placebo effect because the presence of a cold is largely determined by subjective self-evaluation of symptom severity.   Furthermore, unless great care is taken in the placebo formulation, study participants can identify the presence of zinc on the basis of aftertaste, nausea, and mouth soreness.

30.     This Court likewise previously held in *Melgar v. Zicam LLC*, 2016 WL 1267870 (E.D. Cal. Mar. 31, 2016), that "qualified experts" had utilized "reliable principles and methods" for opining that Defendant's Pre-Cold Products are no more effective than a placebo.

31.     Further, "[s]tatistical analysis performed in studies that Defendants conducted in 2007 and 2013" demonstrate that Defendant's products are "no more effective than placebo."  *Id.* At *7.

32.     Although Defendant lacks scientifically valid substantiation for the claims that Zicam Pre-Cold Products prevent or mitigate cold symptoms, that is not the basis for the claims alleged here.  Instead, the crux of this case is that—irrespective of Defendant's lack of substantiation—the labeling statements at issue here are affirmatively false or misleading, or otherwise have the capacity to deceive or confuse reasonable consumers.  In other words, Plaintiff is not arguing that Defendant has the burden to prove that its products are effective or that it must conduct tests showing its products are effective; instead, Plaintiff argues that she can affirmatively prove that Defendant's products are no more effective than a placebo.  The reason is that, contrary to the labeling:

- Zicam Pre-Cold Products are not a "Cold Remedy" and do not "Shorten[] Colds."
- Zicam Pre-Cold Products do not "reduce[] [the] duration of the common cold" and do not "reduce[] [the] severity of cold symptoms."
- Zicam Pre-Cold Products are not "medicine."
- Taking Zicam Pre-Cold products "at the first sign of a cold" has no beneficial effect on the duration or severity of cold symptoms.
- Zicam Products are no more effective than a placebo.

33.     Defendant knows that its products are no more effective than a placebo, but fail to disclose that fact to consumers.

34.     For consumers choice to be a real choice, consumers must be adequately and truthfully informed about what benefits, if any, Zicam Pre-Cold Products provide.  This would require a disclosure that Zicam Products work no better than a placebo, because without that disclosure, consumer choice is meaningless.

### PLAINTIFF'S PURCHASE OF ZICAM PRE-COLD MEDICINE

35.     In approximately mid-June or early July 2021, Plaintiff Shari Vance purchased Zicam RapidMelts® from a Right-Aid store in or near Roseville, California.

36.     Plaintiff purchased Zicam RapidMelts® after carefully reading the label on the product packaging, and at the time she was specifically looking for a product that would help her reduce the duration or severity of cold symptoms.  Plaintiff relied upon the various representations Defendant made on the product's label, including the following misrepresentations:

- That the Zicam RapidMelts® product is a "Cold Remedy" that "Shortens Colds."
- That the Zicam RapidMelts® product "reduces [the] duration of the common cold" and "reduces [the] severity of cold symptoms ▪ sore throat ▪ stuffy nose ▪ sneezing ▪ coughing ▪ nasal congestion."
- That the Zicam RapidMelts® product is a "Pre-Cold Medicine" that should be "take[n] at the first sign of a cold."
- That taking Zicam RapidMelts® would help her "go from pre-cold to no cold faster."

37.     Each of the above representations, alone and in conjunction with each other, fostered the impression that Zicam RapidMelts® would reduce the duration or severity of colds.

38.     Plaintiff used the entire package of Zicam RapidMelts® as directed but did not obtain the advertised relief from cold symptoms, nor any benefits, from using the product.

39.     To the best of her recollection, Plaintiff purchased Zicam RapidMelts® for approximately $12, which was more expensive than other cold remedies available at the store.  The

aforementioned representations on the product labeling persuaded Plaintiff to spend more on Zicam RapidMelts® than on alternative cold remedies available at the store.

40.    Plaintiff would not have purchased Zicam RapidMelts®, or any similar Zicam Pre-Cold Product, if she had known that they were not effective for treating and/or reducing cold symptoms and that the products were no more effective than a placebo.

41.    Plaintiff regularly goes to stores where Zicam Pre-Cold Products are sold. Plaintiff would purchase Zicam Pre-Cold Products again in the future if the products were more than just a placebo, and in fact reduced the severity and duration of the common cold.  However, if that change were made, Plaintiff would have no way to know if the product labeling was in fact true. As a result, she may either refrain from purchasing Zicam Pre-Cold Products in the future or may purchase them *incorrectly* assuming that they have been improved and can reduce the duration or severity of colds.

## CLASS ACTION ALLEGATIONS

42.    Plaintiff brings this action as a class action under Federal Rule of Civil Procedure 23 on behalf of a Class consisting of all persons in the United States who, within the relevant statute of limitations period, purchased Zicam Pre-Cold Products for personal use.

43.    Plaintiff also seeks to represent a subclass defined as all members of the Class who purchased mislabeled Zicam Pre-Cold Products in California ("the California Class") for personal use.

44.    Plaintiff also seeks to represent a ten-state express warranty subclass defined as all members of the Class who purchased mislabeled Zicam Pre-Cold Products in California, Delaware, D.C., Kansas, Missouri, New Jersey, Ohio, Utah, Virginia, and West Virginia.

45.    Excluded from the Class are the Defendant, the officers and directors of the Defendant at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which either Defendant has or had a controlling interest.

46.     Also excluded from the Class are persons or entities that purchased Zicam Pre-Cold Products for purposes of resale.

47.     Subject to additional information obtained through discovery and further investigation, the foregoing Class and Subclass definitions may be expanded, narrowed, or otherwise modified, including through the use of multi-state subclasses to account for material differences in state law, if any.

48.     Plaintiff is a member of the Class and subclasses she seeks to represent.

49.     The Class is so numerous that joinder of all members is impractical.  Although Plaintiff does not yet know the exact size of the Class, Zicam Pre-Cold Products are sold by over eighty major retailers across the United States, including stores such as Walmart, CVS Pharmacy, Walgreens, Costco, and Target.  Major online retailers include Amazon.com and Drugstore.com. Consequently, Zicam hails itself as the "#1 cold shortening product in the USA."  According to Zicam, it enjoys the position as "the Pre-Cold medicine leader."  Upon information and belief and based upon Defendant's statements, the Class includes more than one million members. Accordingly, joinder is impracticable.

50.     The Class is ascertainable because the Class Members can be identified by objective criteria.  Individual notice can be provided to Class Members "who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

51.     There are numerous questions of law and fact common to the Class which predominate over any individual actions or issues, including but not limited to:

        (a)     Whether Defendant breached an express warranty made to Plaintiff and the Class;

        (b)     Whether Defendant breached the implied warranties of merchantability and/or fitness for a particular purpose made to Plaintiff and the Class;

        (c)     Whether Defendant's marketing of Pre-Cold Products is false, misleading, and/or deceptive;

        (d)     Whether Defendant's marketing of Pre-Cold Products is unfair;

(e)    Whether Zicam Pre-Cold Products are efficacious, effective, and useful for reducing the duration or symptoms of a common cold;

(f)    Whether Zicam Pre-Cold Products are no more effective than a placebo for treating the common cold;

(g)    Whether Defendant knew, but failed to disclose, that Zicam Pre-Cold Products are no more effective than a placebo for treating the common cold;

(h)    Whether Defendant was unjustly enriched by its conduct;

(i)    Whether Defendant violated the CLRA;

(j)    Whether Defendant violated the UCL;

(k)    Whether Defendant violated the FAL;

(l)    Whether, as a result of Defendant's misconduct as alleged herein, Plaintiff and the Class Members are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

52.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendant's wrongful conduct.  Plaintiff has no interests antagonistic to the interests of the other members of the Class.  Plaintiff and all members of the Class have sustained economic injury arising out of Defendant's violations of common and statutory law as alleged herein.

53.    Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class Members she seeks to represent, she has retained counsel competent and experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of the Class Members will be fairly and adequately protected by Plaintiff and her counsel.

54.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class Members.  Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases

the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### Breach Of Express Warranty

55.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

56.     Plaintiff brings this Count individually and on behalf of the members of the Class and subclasses.

57.     In connection with the sale of the Products, Defendant issued Express Warranties including that

- That each Zicam Pre-Cold Product "reduces duration of the common cold," and "reduces severity of cold symptoms ▪ sore throat ▪ stuffy nose ▪ sneezing ▪ coughing ▪ nasal congestion."

- That each Zicam Pre-Cold Product is a "COLD REMEDY" and "PRE-COLD MEDICINE" that "SHORTENS COLDS."

58.     The above-described warranties were bolstered with instructions that reinforced that the purpose of the Pre-Cold Products was to reduce the duration and severity of the cold, including the instruction to use the products "at the first sign of a cold and continue to use until symptoms completely subside."

59.     Defendant's affirmations of fact and promises made to Plaintiff and the Class on the Product labels, became part of the basis of the bargain between Defendant and Plaintiff and the

Class Members, thereby creating express warranties that the Products would conform to Defendant's affirmations of fact, representations, promises, and descriptions.

60.     Defendant breached its express warranties because Zicam Pre-Cold Products do not in fact prevent, shorten, or reduce the severity of the common cold or cold symptoms.  In short, the Products do not perform as expressly warranted.

61.     Plaintiff and the Class Members were injured as a direct and proximate result of Defendant's breach because: (a) they would not have purchased Zicam Pre-Cold Products if they had known the true facts; (b) they paid for the Products due to the mislabeling of Zicam Pre-Cold Products; and (c) Zicam Pre-Cold Products did not have the quality, effectiveness, or value as promised.   As a result, Plaintiff and the Class have been damaged in the full amount of the purchase price of the Products.

**COUNT II**
**Breach of Implied Warranty of Merchantability**

62.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

63.     Plaintiff brings this Count individually and on behalf of the members of the Class.

64.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that the Pre-Cold Products would prevent, shorten, and reduce the severity of the symptoms of the common cold.

65.     Defendant, through its acts and omissions set forth herein, in their sale, marketing, and promotion of Zicam Pre-Cold Products, made implied representations to Plaintiff and the Class that their Pre-Cold Cold Products were effective at preventing, reducing the duration, and reducing the severity of the common cold.

66.     Defendant's Products were entirely useless for their ordinary purpose of preventing, reducing the duration of, and relieving the symptoms of the common cold.  The Products were not of fair and average quality within Defendant's description.  The Products were also not labeled as

required because the Product packaging contains numerous misrepresentations.  The Products do not conform with the promises on their labels.

67.     Defendant breached its implied warranties because the Pre-Cold Products did not and cannot prevent, reduce the duration, or reduce the severity of the common cold.  As a result of Defendant's conduct, Plaintiff and the Class did not receive the goods as impliedly warranted by Defendant to be merchantable or fit for the purpose they were sold.

68.     Plaintiff and the Class have sustained damages as a proximate result of the foregoing breach of implied warranty in an amount to be determined at trial.

## COUNT III
### Breach of Implied Warranty of Fitness for a Particular Purpose

69.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

70.     Plaintiff brings this Count individually and on behalf of the members of the Class.

71.     Defendant marketed, distributed, and/or sold the Products with implied warranties that they were fit for the particular purpose of preventing, reducing the duration of, and relieving the symptoms of the common cold.  However, the highly diluted ingredients in the Products are no more effective for the common cold than a placebo.  At the time the Products were sold, Defendant knew or should have known that Plaintiff and the Class Members would rely on Defendant's skill and judgment regarding the efficacy of the Products.

72.     In reliance on Defendant's skill and judgment and the implied warranties of fitness for the purpose, Plaintiff and the Class Members purchased the Products for use in preventing and reducing the duration of the common cold, as well as for use in alleviating the severity of cold symptoms.

73.     The Products were not altered by Plaintiff or the Class Members.

74.     Plaintiff and the Class Members were injured as a direct and proximate result of Defendant's breach because: (a) they would not have purchased the Products if the true facts concerning their efficacy had been known; (b) they paid a price for the Products based on

Defendant's representations regarding the Products' efficacy; and (c) the Products did not have the characteristics, uses, or benefits as promised.  As a result, Plaintiff and the Class Members have been damaged in the full amount of the purchase price of the Products.

**<u>COUNT IV</u>**
**Violation of the Consumer Legal Remedies Act ("CLRA")**
**(Civil Code §§ 1750, *et. seq.*)**

75.    Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

76.    Plaintiff brings this Count individually and on behalf of the California Class.

77.    Plaintiff and the California Class Members are consumers who purchased the Pre-Cold Products for personal, family, or household purposes.  Accordingly, Plaintiff and the California Class Members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d).  Plaintiff and the California Class Members are not sophisticated experts with independent knowledge of the formulation or efficacy of the homeopathic Products.

78.    At all relevant times, Zicam Pre-Cold Products constituted "goods" as that term is defined in Cal. Civ. Code § 1761(a).

79.    At all relevant times, Defendant was a "person" as that term is defined in Civ. Code § 1761(c).

80.    At all relevant times, Plaintiff's purchase of Zicam Pre-Cold Products, and the purchases of other Class and Subclass members, constituted  "transactions" as that term is defined in Cal. Civ. Code § 1761(e).  Defendant's actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

81.    The policies, acts, and practices described in this Complaint were intended to and did result in the sale of Zicam Pre-Cold Products to Plaintiff and the Class.  Defendant's practices, acts, policies, and course of conduct violated the CLRA §1750 *et seq.* as described above.

82.     Defendant represented that Zicam Pre-Cold Products have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have in violation of Cal. Civ. Code § 1770(a)(5).

83.     Defendant represented that the Products were of a particular standard, quality, and grade, when they were of another, in violation of California Civil Code § 1770(a)(7).

84.     Defendant violated California Civil Code §§ 1770(a)(5) and (a)(7) by representing that Zicam Pre-Cold Products were effective at preventing, reducing the duration, and reducing the severity of the common cold when, in fact, they were not.

85.     Defendant represented that Zicam Pre-Cold Products were of a particular standard or quality when Defendant is aware that they were of another in violation of § 1770(a)(7) of the CLRA.  Defendant maintained that the Products prevented, reduced the duration, and reduced the severity of the common cold when they did not.

86.     Defendant advertised Zicam Pre-Cold Products with the intent not to sell them as advertised in violation of § 1770(a)(9) of the CLRA.  Defendant did not intend to sell Zicam Pre-Cold Products as advertised because they knew that the homeopathic dilution of the ingredients in the Products would not effectively prevent, reduce the duration, or reduce the severity of the common cold.  Defendant knew that the Products' so-called active ingredients are ineffective and inactive homeopathic concentrations.

87.     Defendant knew that the Products are no more effective at treating the common cold than a placebo, but intentionally chose not to disclose that fact.

88.     Plaintiff and the California Class Members suffered injuries caused by Defendant's misrepresentations because: (a) Plaintiff and the Class Members would not have purchased Zicam Pre-Cold Products if they had known the true facts; (b) Plaintiff and the Class paid a price for the Products due to the mislabeling of the Pre-Cold Products; and (c) Zicam Pre-Cold Products did not have the level of quality, effectiveness, or value as promised.

89.     Plaintiff seeks all available relief under the CLRA.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT V
### Violation of the False Advertising Law
### (Business & Professions Code §§17500 *et seq.*)

90.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

91.     Plaintiff brings this Count on behalf of the California Class.

92.     California's FAL (Bus. & Prof. Code §§17500, *et seq.*) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

93.     Throughout the Class Period, Defendant committed acts of false advertising, as defined by the FAL, by using false and misleading statements to promote the sale of Zicam Pre-Cold Products, as described above, and including, but not limited to, that the Products "reduce[] duration and severity of the common cold," "reduce[] severity of cold symptoms ▪ sore throat ▪ stuffy nose ▪ sneezing ▪ coughing ▪ nasal congestion," and "GO FROM PRE-COLD™ TO NO COLD FASTER.™"

94.     Defendant knew or should have known through the exercise of reasonable care that their statements were untrue and misleading.

95.     Defendant's actions in violation of the FAL were false and misleading such that the general public is and was likely to be deceived.

96.     As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff and members of the Class have suffered injury and actual out-of-pocket losses as a result of Defendant's FAL violation because: (a) Plaintiff and the Class would not have purchased Zicam Pre-Cold Products if they had known the true facts regarding the effectiveness and contents of the products; (b) Plaintiff and the Class paid a price due to the misrepresentations

of Zicam Pre-Cold Products; and (c) Zicam Pre-Cold Products did not have the promised quality, effectiveness, or value.

97.     Plaintiff brings this action pursuant to Bus. & Prof. Code § 17535 for injunctive relief to enjoin the practices described herein and to require Defendant to issue corrective disclosures to consumers. Plaintiff and the California Class are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, inter alia, California Code of Civil Procedure §1021.5.

### COUNT VI
**Violation of the "Unlawful Prong" of the Unfair Competition Law
(Bus. & Prof. Code §§ 17200 *et seq.*)**

98.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

99.     Plaintiff brings this Count on behalf of the California Class.

100.     The UCL, Bus. & Prof. Code § 17200 *et seq.*, provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."  The UCL also provides for injunctive relief and restitution for UCL violations.

101.     "By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).

102.     Virtually any law or regulation – federal or state, statutory, or common law – can serve as a predicate for an UCL "unlawful" violation.  *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012).

103.     Defendant violated the "unlawful prong" by violating the CLRA and the FAL, as well as by breaching express and implied warranties as described herein.

104.    As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff and members of the Class have suffered injury and actual out-of-pocket losses as a result of Defendant's UCL "unlawful prong" violation because: (a) Plaintiff and the Class would not have purchased Zicam Pre-Cold Products if they had known the true facts regarding the effectiveness and contents of the products; (b) Plaintiff and the Class paid a price due to the misrepresentations of Zicam Pre-Cold Products; and (c) Zicam Pre-Cold Products did not have the promised quality, effectiveness, or value.

105.    Plaintiff and the California Class seek all available relief under the UCL.

## COUNT VII
### Violation of the "Fraudulent Prong" of the Unfair Competition Law
### (Bus. & Prof. Code §§ 17200 *et seq.*)

106.    Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

107.    Plaintiff brings this Count on behalf of the California Class.

108.    The UCL, Bus. & Prof. Code § 17200 *et seq.*, provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

109.    Defendant's conduct, described herein, violated the "fraudulent" prong of the UCL because Defendant represented that Zicam Pre-Cold Products prevent, reduce the duration, and reduce the severity of the common cold when, in fact, they do not.  As described above, Defendant misrepresented that the Zicam Pre-Cold Products "reduce[] duration and severity of the common cold," "reduce[] severity of cold symptoms ▪ sore throat ▪ stuffy nose ▪ sneezing ▪ coughing ▪ nasal congestion," and "GO FROM PRE-COLD™ TO NO COLD FASTER.™"

110.    Plaintiff and the California Class Members are not sophisticated experts with independent knowledge of the formulation or efficacy of the homeopathic Products, and they acted reasonably when they purchased Defendant's Products based on their belief that Defendant's representations were true.

111.    Defendant knew or should have known, through the exercise of reasonable care, that its representations about the Products were untrue and misleading.

112.    As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff and members of the Class have suffered injury and actual out-of-pocket losses as a result of Defendant's UCL "fraudulent prong" violation because: (a) Plaintiff and the Class would not have purchased Zicam Pre-Cold Products if they had known the true facts regarding the effectiveness and contents of the Products; (b) Plaintiff and the Class paid a price due to the misrepresentations of Zicam Pre-Cold Products; and (c) Zicam Pre-Cold Products did not have the promised quality, effectiveness, or value.

113.    Plaintiff and the California Class seek all available relief under the UCL.

### COUNT VIII
**Violation of the "Unfair Prong" of the Unfair Competition Law**
**(Bus. & Prof. Code §§ 17200 *et seq.*)**

114.    Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

115.    Plaintiff brings this Count on behalf of the California Class.

116.    The UCL, Bus. & Prof. Code § 17200 *et seq.*, provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

117.    Defendant's misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.  Defendant's conduct is unfair in that the harm to Plaintiff and the Class arising from Defendant's conduct outweighs the utility, if any, of those practices.

118.    Defendant's practices as described herein are of no benefit to consumers who are tricked into paying exorbitant prices for sugar pills.  Defendant's practice of injecting misinformation into the marketplace about homeopathy and the treatment of the common cold is unethical and unscrupulous.  Defendant's practices are also substantially injurious to consumers

because, among other reasons, consumers may forego other necessary treatment for their illnesses because of their mistaken belief that the Products will prevent, shorten, and alleviate the symptoms of the common cold.

119.   As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff and members of the Class have suffered injury and actual out-of-pocket losses as a result of Defendant's UCL "unfair prong" violation because: (a) Plaintiff and the Class would not have purchased Zicam Pre-Cold Products  if they had known the true facts regarding the effectiveness and contents of the products; (b) Plaintiff and the Class paid a price due to the misrepresentations of Zicam Pre-Cold Products; and (c) Zicam Pre-Cold Products did not have the promised quality, effectiveness, or value.

120.   Plaintiff and the California Class seek all available relief under the UCL.

## COUNT IX
## Unjust Enrichment

123.   Plaintiff hereby re-alleges and incorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

124.   To the extent required by law, this count is alleged in the alternative, as permitted under F.R.C.P. 8.

125.   Plaintiff and the other members of the Classes conferred benefits on Defendant by purchasing the Products.

126.   Defendant has been unjustly enriched in retaining the revenues derived from the purchase of the Products by Plaintiff and the other members of the Classes.

127.   Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Products was misleading to consumers, which caused injuries to Plaintiff and the other members of the Classes because they would have not purchased the Products if Defendant had disclosed that the Products do not shorten, or treat colds and that the Products were in fact placebos.

128.    Putative class members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.  Putative class members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action;

B.    For an order declaring that the Defendant's conduct violates the statutes referenced herein;

C.    Awarding compensatory and punitive damages in favor of Plaintiff, members of the Class, and the California Class against Defendant for all damages sustained as a result of the Defendant's wrongdoing, in an amount to be proven at trial, including interest thereon;

D.    Awarding injunctive relief against Defendant to prevent Defendant from continuing their ongoing unfair, unconscionable, and/or deceptive acts and practices;

E.    For an order of restitution and/or disgorgement and all other forms of equitable monetary relief;

F.    Awarding Plaintiff and members the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

G.    Awarding such other and further relief as the Court may deem just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable in this action.

Dated:  March 30, 2022                Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:_____ */s/ Joel D. Smith*___
           Joel D. Smith

L. Timothy Fisher (State Bar No. 191626)
Joel Smith (State Bar No. 244902)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455

Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com
jsmith@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: scott@bursor.com

*Attorneys for Plaintiff*