**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com
        jsmith@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: scott@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARI VANCE, on Behalf of Herself and all Others Similarly Situated,<br><br>     Plaintiff,<br><br>  v.<br><br>CHURCH & DWIGHT CO., INC.<br><br>     Defendant. | Case No. 2:22-cv-00044-MCE-KJN<br><br>**OPPOSITION TO MOTION TO DISMISS**<br><br>Hon. Morrison C. England, Jr.<br>Courtroom 7<br>Date: July 21, 2022<br>Time: 2:00 pm |

# TABLE OF CONTENTS

**PAGE(S)**

I.    PRELIMINARY STATEMENT ................................................................1

II.   STATEMENT OF FACTS ...................................................................2

III.  ARGUMENT .......................................................................................3

    A.   As In *Melgar*, This Is Not A Lack Of Substantiation Case ........................3

        1.   Defendant Ignores The Standard Under *King Bio* And The Pleadings ..........................................................................3

        2.   *Kwan* And *Yamasaki* Do Not Support Defendant's Position ........5

        3.   Defendant's Challenges To The Falsity Allegations Lack Merit And Have Nothing To Do With Lack-Of-Substantiation ..................7

            a.   Plaintiff's Allegations About Her Personal Experience Are Consistent With *Sandoval* And Defendant's Own Cited Authority ................................................................8

            b.   Defendant's Arguments Concerning Scientific Testing And Literature Lack Merit And Rest On Factual Disputes ..........................................................................9

    B.   Plaintiff Sufficiently Alleges Claims For Equitable Relief ........................11

        1.   *Sonner* Does Not Support Dismissal Of Equitable Claims At The Pleading Stage. ................................................................12

        2.   *Sonner* Does Not Preclude Injunctive Relief ..............................14

        3.   *Sonner* Does Not Support Dismissal Of The CLRA Claim ..........14

        4.   *Sonner* Does Not Support Dismissal Of The Unjust Enrichment Claim For Several Additional Reasons ..................15

    C.   The FAC Should Survive Dismissal under Rule 12(b)(1) ........................16

        1.   As in *Melgar*, The Putative Ten-State Subclass Presents No Standing Issues ......................................................................16

        2.   Under *Davidson*, Plaintiff Has Standing to Seek Injunctive Relief ..............................................................................17

IV.  CONCLUSION .................................................................................18

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Alvarez v. NBTY, Inc.*,
  2017 WL 6059159 (S.D. Cal. Dec. 6, 2017) ........................................................................ 16

*Am. Master Lease LLC v. Idanta Partners, Ltd.*,
  225 Cal. App. 4th 1451 (2014) ............................................................................................ 15

*Bitton v. Gencor Nutrientes, Inc.*,
  654 Fed. Appx. 358 (9th Cir. 2016) ........................................................................ 4, 6, 8, 10

*Booth-Kelly Lumber Co. v. Southern Pac. Co.*,
  183 F.2d 902 (9th Cir. 1950) ............................................................................................... 15

*Bronson v. Johnson & Johnson*, 2013,
  WL 1629191 (N.D. Cal. Apr. 16, 2013) ............................................................................... 4

*Brown v. Nature's Path Foods*,
  2022 WL 717816 (N.D. Cal. Mar. 10, 2022) ...................................................................... 13

*Brown v. Van's Int'l Foods, Inc.*,
  2022 WL 1471454 (N.D. Cal. May 10, 2022) ..................................................................... 17

*Cabral v. Supple*,
  2012 WL 12895824 (C.D. Cal. July 3, 2012) ........................................................................ 5

*Cabrales v. Castle & Cook Mortg., LLC*,
  2015 WL 3731552 (E.D. Cal. June 12, 2015) ..................................................................... 13

*Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Pathology Labs. of Arkansas, P.A.*,
  71 F.3d 1251 (7th Cir. 1995) ............................................................................................... 15

*Chavez v. Nestle USA, Inc.*,
  511 F. App'x 606 (9th Cir. 2013) ...................................................................................... 4, 6

*Coleman v. Mondelez Int'l. Inc.*,
  554 F. Supp. 3d 1055 (C.D. Cal. July 2021) ................................................................. 13, 14

*Dailey v. A&W Concentrate Co.*,
  519 F. Supp. 3d 668 (N.D. Cal. 2021) ................................................................................ 18

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) ......................................................................................... 14, 17

*Eckler v. Wal-Mart Stores, Inc.*,
  2012 WL 5382218 (S.D. Cal. Nov. 1, 2012) ........................................................................ 9

*Est. of Strickland v. Nevada Cnty.*,
  2022 WL 992968 (E.D. Cal. Apr. 1, 2022) ........................................................................... 1, 4

*F.D.I.C. v. Varrasso*,
  2012 WL 219046 (E.D. Cal. Jan. 23, 2012) ............................................................................. 8

*F.T.C. v. QT, Inc.*,
  512 F.3d 858 (7th Cir. 2008) .................................................................................................. 1

*Finnegan v. Church & Dwight Co., Inc.*,
  2018 WL 10345328 (N.D. Cal. Jan. 18, 2018) ................................................................. 10, 11

*Forsyth v. Cessna Aircraft Co.*,
  520 F.2d 608 (9th Cir. 1975) ................................................................................................ 16

*Freedline v. O Organics LLC*,
  445 F. Supp. 3d 85 (N.D. Cal. 2020) ...................................................................................... 8

*Gasser v. Kiss My Face, LLC*,
  2017 WL 4773426 (N.D. Cal. Oct. 23, 2017) ...................................................................... 4, 6

*Gomez v. Toledo*,
  446 U.S. 635 (1980) ................................................................................................................ 8

*Greenberg v. Target Corp.*,
  2017 WL 9853748 (N.D. Cal. Aug. 28, 2017) ...................................................................... 10

*Gross v. Vilore Foods Co., Inc.*,
  2020 WL 6319131 (S.D. Cal. Oct. 28, 2020) ....................................................................... 14

*Hernandez v. Johnson & Johnson Consumer Inc.*,
  2020 WL 2537633 (D.N.J. May 19, 2020) .............................................................................. 6

*In re Bang Energy Drink Mktg. Litig.*,
  2020 WL 4458916 (N.D. Cal. Feb. 6, 2020) .................................................................... 4, 5, 6

*In re California Gasoline Spot Mkt. Antitrust Litig.*,
  2021 WL 1176645 (N.D. Cal. Mar. 29, 2021) ...................................................................... 15

*In re Clorox Consumer Litig.*,
  894 F. Supp. 2d 1224 (N.D. Cal. 2012) .................................................................................. 4

*In re Hydroxycut Mktg. and Sales Practices Litig.*,
  801 F. Supp. 2d 993 (S.D. Cal. 2011) ................................................................................... 16

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2011 WL 4501223 (N.D. Cal. Sept. 28, 2011) ..................................................................... 15

*Jeong v. Nexo Fin. LLC*,
   2022 WL 174236 (N.D. Cal. Jan. 19, 2022) ................................................................ 12

*Krause-Pettai v. Unilever United States, Inc.*,
   2021 WL 1597931 (S.D. Cal. Apr. 23, 2021) ............................................................... 13

*Kutza v. Williams Sonoma, Inc.*,
   2018 WL 5886611 (N.D. Cal. Nov. 9, 2019) ............................................................... 17

*Kwan v. SanMedica Int'l*,
   854 F.3d 1088 (9th Cir. 2017) ............................................................................... 5, 6

*Locklin v. StriVectin Operating Co., Inc.*,
   2022 WL 867248 (N.D. Cal. Mar. 23, 2022) ....................................................... 4, 6, 11

*Lopez v. Cequel Comms., LLC*,
   2021 WL 4476831 (E.D. Cal. Sept. 30, 2021) ............................................................ 12

*McAdory v. M.N.S. & Assoc., LLC*,
   952 F.3d 1089 (9th Cir. 2020) ................................................................................. 9

*McCalden v. Cal. Library Ass'n*,
   955 F.2d 1214 (9th Cir.1990) ................................................................................ 13

*Melendres v. Arpaio*,
   784 F.3d 1254 (9th Cir. 2015) ............................................................................... 17

*Melgar v. Zicam LLC*,
   2016 WL 1267870 (E.D. Cal. Mar. 31, 2016) ..................................................... passim

*Molsbergen v. U.S.*,
   757 F.2d 1016 (9th Cir. 1985) ........................................................................... 13, 14

*Moyle v. Liberty Mut. Retirement Ben. Plan.*,
   823 F.3d 948 (9th Cir. 2016) ............................................................................. 12, 13

*Nacarino v. Chobani, LLC*,
   2022 WL 344966 (N.D. Cal. Feb. 4, 2022) ....................................................... 12, 13, 18

*Nat'l Council Against Health Fraud v. King Bio Pharm., Inc.*,
   107 Cal. App. 4th 1336 (2003) ........................................................................ 3, 8, 10

*NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*,
   838 F. App'x 231 (9th Cir. 2020) ............................................................................. 7

*Patterson v. RW Direct, Inc.*,
   2018 WL 6106379 (N.D. Cal. Nov. 21, 2018) ............................................................ 16

*Racies v. Quincy Bioscience, LLC*,
   2016 WL 5746307 (N.D. Cal. Sept. 30, 2016) .................................................................. 10

*Robinson v. Unilever United States, Inc.*,
   2019 WL 2067941 (C.D. Cal. Mar. 25, 2019) .................................................................. 13

*Roney v. Miller*,
   705 F. App'x 670 (9th Cir. 2017) .................................................................................... 18

*Roper v. Big Heart Pet Brands, Inc.*,
   2020 WL 7769819 (E.D. Cal. Dec. 30, 2020) .................................................................. 14

*Rothman v. Equinox Holdings, Inc.*,
   2021 WL 1627490 (C.D. Cal. Apr. 27, 2021) .................................................................. 13

*Sanchez v. Cty. Of Sacramento*,
   2022 WL 866057 (E.D. Cal. Mar. 23, 2022) .................................................................. 15

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) .............................................................................. 11, 12, 14

*Sonner v. Schwabe N. Am., Inc.*,
   911 F.3d 989 (9th Cir. 2018) ........................................................................................ 4, 6

*Staley v. Gilead Scis., Inc.*,
   2020 WL 1032320 (N.D. Cal. Mar. 3, 2020) .................................................................. 17

*Tubbs v. AdvoCare Int'l., LP*,
   2017 WL 4022397 (C.D. Cal. Sept. 12, 2017) ................................................................ 8, 9

*United States v. United Healthcare Ins. Co.*,
   848 F.3d 1161 (9th Cir. 2016) ........................................................................................... 8

*Yamasaki v. Zicam LLC*,
   2021 WL 4951435 (N.D. Cal. Oct. 25, 2021) ................................................................ 6, 7

*Yeomans v. World Fin. Grp. Ins. Agency, Inc.*,
   2022 WL 844152 (N.D. Cal. Mar. 22, 2022) .................................................................. 13

**STATUTES**

Bus. & Prof. Code § 17200 .................................................................................................. 3

Bus. & Prof. Code § 17500 .................................................................................................. 3

Cal. Civ. Code § 1780(a) .................................................................................................... 14

**RULES**

Fed. R. Civ. P. 8 ................................................................................................................. 13

Fed. R. Civ. P. 12(b)(6) ....................................................................................................... 4

1    **I.    PRELIMINARY STATEMENT**

2         This case is essentially a sequel to *Melgar v. Zicam LLC*, 2016 WL 1267870, at *10 (E.D.

3    Cal. Mar. 31, 2016) (England, J.).  In *Melgar,* this Court denied the defendant's motion for

4    summary judgment seeking a ruling that the labeling on Zicam products was not deceptive, found

5    that plaintiffs submitted admissible evidence that Zicam products are no more effective than a

6    placebo, and certified a multi-state class of consumers in ten states, which is the same putative ten-

7    state multi-class alleged in the complaint here.

8         Nothing has changed since the *Melgar* decision that would support dismissal on the

9    pleadings here.  Defendant sells Zicam "Pre-Cold Medicine" that supposedly shortens or reduces

10   the severity of colds, when in fact they provide no relief apart from the placebo effect.  FAC ¶¶ 4,

11   20, 32.  "[S]elling a placebo as if it had therapeutic effect directly injures the consumer."  *F.T.C. v.*

12   *QT, Inc.*, 512 F.3d 858, 863 (7th Cir. 2008).  Since the Pre-Cold Products are no more effective

13   than a placebo, they do not prevent colds from occurring, do not "reduce[] duration of the common

14   cold," and do not "reduce[] severity of cold symptoms ▪ sore throat ▪ stuffy nose ▪ sneezing ▪

15   coughing ▪ nasal congestion" as Defendant advertises.  FAC ¶ 36.  Plaintiff would not have

16   purchased Zicam RapidMelts®, or any similar Zicam Pre-Cold Product, if she had known that they

17   were not effective for treating and/or reducing cold symptoms and that the products were no more

18   effective than a placebo.  *Id.* ¶ 40.

19        Defendant argues that this is a lack of substantiation case, despite the fact that Plaintiff

20   alleges throughout her complaint that Defendant makes affirmative representations that are

21   provably false.  *See* FAC 20-31, 33-34.  Plaintiff even expressly disclaims that she is pursuing a

22   lack of substantiation theory in her complaint, and those allegations must be accepted as true on a

23   Rule12(b)(6) motion.  *See Est. of Strickland v. Nevada Cnty.*, 2022 WL 992968, at *3 (E.D. Cal.

24   Apr. 1, 2022).  Plaintiff properly alleges a plausible inference that Defendant's labeling statements

25   at issue here are affirmatively false or misleading, or otherwise have the capacity to deceive or

26   confuse reasonable consumers.

27

28

## II.    STATEMENT OF FACTS

Defendant falsely and deceptively represents that the over-the-counter ("OTC"), homeopathic remedy Zicam prevents, shortens, and reduces the severity of the symptoms of the common cold when, in fact, the products have no impact on cold symptoms. FAC ¶ 1.

Plaintiff purchased Zicam RapidMelts® after carefully reading the label on the product packaging, and relied upon the various representations Defendant made on the product's label, including the following misrepresentations:

- That the Zicam RapidMelts® product is a "Cold Remedy" that "Shortens Colds."
- That the Zicam RapidMelts® product "reduces [the] duration of the common cold" and "reduces [the] severity of cold symptoms ▪ sore throat ▪ stuffy nose ▪ sneezing ▪ coughing ▪ nasal congestion."
- That the Zicam RapidMelts® product is a "Pre-Cold Medicine" that should be "take[n] at the first sign of a cold."
- That taking Zicam RapidMelts® would help her "go from pre-cold to no cold faster."

*Id.* ¶ 35-36. Each of the above representations, alone and in conjunction with each other, fostered the impression that Zicam RapidMelts® would reduce the duration or severity of colds, despite the fact that it did neither. *Id.* ¶ 37-39. Plaintiff would not have purchased the Zicam RapidMelts®, or any similar Zicam Pre-Cold Product, if she had known they were not effective for treating and/or reducing cold symptoms and that the products were no effective than a placebo. *Id.* ¶ 40.

Defendant argues that Plaintiff's falsity allegations are implausible when Defendant's own studies showed that its products are no more effective than a placebo and the highest quality randomized trials generally show that zinc lozenges are infective. *Id.* ¶¶23-31.  Further, Plaintiff's theory of liability is *not* that Zicam's claims are unproven, uncertain, or subject to reasonable debate, but instead that the claims are affirmatively false because Zicam products are no more effective than a placebo. *Id.* ¶¶ 20, 32.

Plaintiff therefore brings this class action on behalf of a Class consisting of all persons in the United States who, within the relevant statute of limitations period, purchased Zicam Pre-Cold Products for personal use ("The Class"), a subclass defined as all members of the Class who purchased mislabeled Zicam Pre-Cold Products in California for personal use ("The California Class"), and a ten-state express warranty subclass defined as all members of the Class who purchased mislabeled Zicam Pre-Cold Products in California, Delaware, D.C., Kansas, Missouri, New Jersey, Ohio, Utah, Virginia, and West Virginia. *Id.* ¶¶ 42-44. Plaintiff seeks relief in this action individually and on behalf of all purchasers of Zicam Pre-Cold Products for breach of express and implied warranties; violations of the California Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, et seq., California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, et seq., and California's False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, et seq.; and for unjust enrichment. *Id.* ¶¶ 4-5.

## III. ARGUMENT

### A. As In *Melgar*, This Is Not A Lack Of Substantiation Case

#### 1. Defendant Ignores The Standard Under *King Bio* And The Pleadings

Defendant argues that this is a lack of substantiation case barred by *Nat'l Council Against Health Fraud v. King Bio Pharm., Inc.*, 107 Cal. App. 4th 1336, 1344-47 (2003) ("*King Bio*"). If these arguments sound familiar, it is because this Court rejected the *same* arguments in an earlier case involving nearly the *same* allegations about the *same* products, in *Melgar v. Zicam LLC*, 2016 WL 1267870, at *10 (E.D. Cal. Mar. 31, 2016) (England, J.) ("Defendants' emphasis on *King Bio* is misplaced and their suggestion that Plaintiff is simply alleging a lack of substantiation is inaccurate."). *King Bio* stands for the unremarkable proposition that the plaintiff bears the burden of proof in a false advertising case. *King Bio* rejected the plaintiff's argument that courts should "shift the burden of proof to the defendant" when a plaintiff challenges advertising based solely on a lack of supporting scientific evidence (*i.e.*, "lack of substantiation"). *King Bio*, 107 Cal. App. 4th. at 1341; *see also Melgar*, 2016 WL 1267870, at *10 (explaining *King Bio*).

*King Bio* is inapplicable where the "claims rest not on 'lack of substantiation' but rather on 'provable falsehoods.'" *In re Bang Energy Drink Mktg. Litig.*, 2020 WL 4458916, at *8 n.7 (N.D. Cal. Feb. 6, 2020); *accord Melgar*, 2016 WL 1267870, at *10.  The Ninth Circuit and district courts "have been careful to distinguish between allegations that a defendant's advertising claims are actually false and allegations that such claims lack substantiation." *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1232 (N.D. Cal. 2012); *see also Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 993 (9th Cir. 2018) (reversing dismissal and rejecting defendant's lack of substantiation argument); *Bitton v. Gencor Nutrientes, Inc.*, 654 Fed. Appx. 358, 362 (9th Cir. 2016) (same); *Chavez v. Nestle USA, Inc.*, 511 F. App'x 606, 607 (9th Cir. 2013) (same).[1]

There is no reason for a different outcome here than in *Melgar* because the theory of the case is the same.  *See Melgar*, 2016 WL 1267870, at *10.  For one thing, Defendant's own authority holds that "[c]ourts look to a plaintiff's complaint as a whole when determining if a plaintiff merely alleged a lack of substantiation claim." *Bronson v. Johnson & Johnson, Inc.*, 2013 WL 1629191, at *8 (N.D. Cal. Apr. 16, 2013).  Throughout the complaint, Plaintiff alleges that Defendant makes affirmative misrepresentations that are provably false.  *See* FAC, ¶¶ 20-31, 33-34.  Conversely, Defendant does not cite any allegation in the FAC stating that Defendant should be liable for failing to substantiate its claims, because there is none.

For another thing, Plaintiff expressly disclaims that she is pursuing a lack of substantiation theory in Paragraph 32 of the FAC, and those allegations must be accepted as true on a Rule 12(b)(6) motion:[2]

---

[1] *See also*, *e.g.*, *Locklin v. StriVectin Operating Co., Inc.*, 2022 WL 867248, at *4 (N.D. Cal. Mar. 23, 2022) ("Locklin does not allege that … no scientific evidence exists to bolster the company's advertising. He instead asserts that StriVectin's "reef safe" label is outright false."); *accord Gasser v. Kiss My Face, LLC*, 2017 WL 4773426, at *3 (N.D. Cal. Oct. 23, 2017).

[2] *Est. of Strickland v. Nevada Cnty.*, 2022 WL 992968, at *3 (E.D. Cal. Apr. 1, 2022) (England, J.) ("On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party").

Although Defendant lacks scientifically valid substantiation for the claims that Zicam Pre-Cold Products prevent or mitigate cold symptoms, ***that is not the basis for the claims alleged here***. ***Instead, the crux of this case is that—irrespective of Defendant's lack of substantiation—the labeling statements at issue here are affirmatively false or misleading, or otherwise have the capacity to deceive or confuse reasonable consumers***. In other words, Plaintiff is not arguing that Defendant has the burden to prove that its products are effective or that it must conduct tests showing its products are effective; instead, Plaintiff argues that she can affirmatively prove that Defendant's products are no more effective than a placebo. The reason is that, contrary to the labeling:

- Zicam Pre-Cold Products are not a "Cold Remedy" and do not "Shorten[] Colds."

- Zicam Pre-Cold Products do not "reduce[] [the] duration of the common cold" and do not "reduce[] [the] severity of cold symptoms."

- Zicam Pre-Cold Products are not "medicine."

- Taking Zicam Pre-Cold products "at the first sign of a cold" has no beneficial effect on the duration or severity of cold symptoms.

- Zicam Products are no more effective than a placebo.

FAC, ¶ 32. Defendant argues the Court should disregard the above-quoted allegations and infer that this case is really a lack-of-substantiation case in disguise, based on the passing reference to lack of substantiation at the beginning of Paragraph 32. *See* MTD, 9:11-20. But given that courts look at the complaint "as a whole" when deciding whether *King Bio* applies, a mere passing reference to a lack of substantiation does not support dismissal. *See In re Bang*, 2020 WL 4458916, at *8 n.7 (*King Bio* inapplicable where the complaint "contains just two paragraphs discussing VPX's claims of scientific substantiation"); *Cabral v. Supple*, 2012 WL 12895824, at *2 (C.D. Cal. July 3, 2012) ("while certain of Cabral's allegations could be characterized fairly as attacking a lack of substantiation, on balance the Complaint is not so limited.").

### 2. *Kwan* **And** *Yamasaki* **Do Not Support Defendant's Position**

Defendant relies on two cases to support its position that this Court's analysis in *Melgar* is no longer valid. <u>First</u>, Defendant would have this Court believe that the decision in *Kwan v. SanMedica Int'l*, 854 F.3d 1088 (9th Cir. 2017), represented a sea change in the law regarding lack-of-substantiation cases. *See* MTD, at 3:2-6. It didn't. *Kwan* was not the first time that the Ninth

Circuit addressed the rule in *King Bio*, nor was it the last.  *See Sonner*, 911 F.3d at 993 (holding *King Bio*'s lack-of-substantiation rule was inapplicable to the case); *Bitton*, 654 Fed. Appx. at 362 (same); *Chavez*, 511 F. App'x at 607 (same).  In *Kwan*, the plaintiff unsuccessfully argued that *King Bio* should not apply at all, and the gravamen of the claims was that defendant lacked substantiation for its claims.  *See Kwan*, 854 F.3d at 1096-97.  The Ninth Circuit and district courts continue to distinguish *Kwan* and/or *King Bio* where the plaintiff alleges actual falsity, rather than alleging that the defendant is liable because it lacks proof supporting its claims.  *See Sonner*, 911 F.3d at 993; *In re Bang*, 2020 WL 4458916, at *8 n.7 (citing *Kwan* but concluding it did not apply); *Locklin*, 2022 WL 867248 at *4 (same); *Gasser*, 2017 WL 4773426 at *3 (same); *Hernandez v. Johnson & Johnson Consumer Inc.*, 2020 WL 2537633, at *4 (D.N.J. May 19, 2020) (same).

Second, Defendant cites *Yamasaki v. Zicam LLC*, 2021 WL 4951435, at *4 (N.D. Cal. Oct. 25, 2021), where the district court concluded the plaintiff was pursuing a lack of substantiation claim concerning certain nasal spray products sold by the Defendant here.  In *Yamasaki*, however, the court quoted—over-and-over again—allegations that were ***explicitly*** about Defendant's lack of substantiation.  The Yamasaki court began its analysis by noting that "[t]hroughout the complaint Plaintiff alleges that Defendant has 'no adequate scientific evidence' for its 'clinically proven' representation."  *Id.* at *4 (quoting complaint).  "Plaintiff further states that '***the only logical conclusion drawn from this complete absence of citations to adequate scientific support is that Zicam Products are not clinically proven to shorten colds***.'"  *Id.* (quoting complaint) (emphasis added).  The district court then cited eight different paragraphs in the complaint when it explained, "[t]hroughout the complaint, Plaintiff contends that 'Zicam Products have never been clinically tested to determine whether they impact the duration of the common cold, and that there is no scientific support for the claim that the Zicam Products are 'clinically proven to shorten colds.'"  *Id.* (quoting complaint); *see also id.* at *5 ("Plaintiff contends that Defendant's 'clinically proven' representations are false because there is no 'robust scientific support' that Defendant's products shorten colds.").

In contrast, Defendant does not cite a single allegation in the FAC like those that supported dismissal in *Yamasaki*.  Instead, Defendant misrepresents the allegations in the FAC to make this case seem more like *Yamasaki* than it really is.  Specifically, on page 3 of its brief, Defendant says that "alleging the scientific support for a defendant's advertising statement is flawed or inconclusive, ***as Plaintiff alleges in the FAC***," does not support falsity.  MTD, 3:11-14 (emphasis added).  There are no allegations in the FAC about Defendant's "flawed or inconclusive" studies; Defendant just made that part up.  Defendant then states that the *Yamasaki* court "rejected the argument that a supposed lack of 'scientific consensus' about whether Zicam's products are effective means that Zicam's advertising is false."  MTD, 3:11-16.  Here again, Defendant cites no allegations in the FAC about a "lack of scientific consensus" about whether Zicam's products work, because there are none.  Plaintiff's theory of liability is *not* that Zicam's claims are unproven, uncertain, or subject to reasonable debate, but instead that the claims are affirmatively false because Zicam products are no more effective than a placebo.  *See* FAC, ¶¶ 20, 32.

### 3. Defendant's Challenges To The Falsity Allegations Lack Merit And Have Nothing To Do With Lack-Of-Substantiation

Defendant argues that this is a lack-of-substantiation case because "Plaintiff pleads no factual allegations supporting a plausible inference that the challenged Zicam Cold Reduction Statements are *false*."  MTD, 9:21-23 (emphasis in original).  Defendant is mixing apples and oranges: the rule in *King Bio* concerning lack-of-substantiation turns on the nature of the plaintiff's theory of liability, not the adequacy of the pleadings.

As for the pleadings, the plausibility standard that Defendant invokes is low.  *See NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 838 F. App'x 231, 234 (9th Cir. 2020) ("However 'fanciful' these facts may seem is irrelevant ... [O]nly the *claim* needs to be plausible, and not the facts themselves.") (emphasis in original).  It defies reality to say the falsity allegations are implausible when: (i) Defendant's *own* studies showed that its products are no more effective than a placebo (FAC, ¶ 31); (ii) this Court previously denied summary judgment for the defendant and determined that "qualified experts" had used "reliable principles and methods" to support their

opinions that Defendant's products are no more effective than a placebo (FAC, ¶¶ 30-31); and (iii) "the highest quality randomized trials" generally show that zinc lozenges are ineffective (*id.* at ¶¶ 23-29); *see also Melgar*, 2016 WL 1267870, at *7.  As shown below, Defendant's arguments to the contrary lack merit.

### a.  Plaintiff's Allegations About Her Personal Experience Are Consistent With *Sandoval* And Defendant's Own Cited Authority

Defendant first argues that Plaintiff's "anecdotal personal experience" does not support a plausible inference of falsity.  The Ninth Circuit has held, more than once, that "[t]he falsity of the advertising claims may be established by testing, scientific literature, or *anecdotal evidence*.'" *Bitton*, 654 Fed. Appx. at 362 (quoting *King Bio*, 107 Cal. App. 4th at 1348) (emphasis added).  In *Sandoval v. PharmaCare US, Inc.*, 730 Fed. Appx. 417, 419 (9th Cir. 2018), the Ninth Circuit described the plaintiffs' testimony about their use of the product as a contributing factor for reversing summary judgement for the defendant.  The allegations in Paragraphs 35-40 of the FAC are far more detailed than the testimony described in *Sandoval*.  *Compare id.* ("Sandoval and Kanfer testified that they experienced no such increase in endurance or stamina after taking IntenseX") *with* FAC ¶¶ 35-40.

Defendant faults the FAC for not describing how Plaintiff knew she had a cold (as opposed to COVID-19), what her symptoms were, or how long they lasted.  MTD, 10:3-13.  "Rule 9(b) 'does not require absolute particularity or a recital of the evidence.'"  *Freedline v. O Organics LLC*, 445 F. Supp. 3d 85, 90 (N.D. Cal. 2020) (quoting *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016)).  Nor is Plaintiff required to anticipate and plead facts that Defendant may believe are relevant to its affirmative defenses.  *F.D.I.C. v. Varrasso*, 2012 WL 219046 at *7 (E.D. Cal. Jan. 23, 2012) ("plaintiffs need not anticipate and attempt to plead around all potential defenses.") (internal quotation omitted); *accord Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

None of the two cases Defendant cites held that Rule 9(b) requires the allegations that Defendant demands.  In fact, both decisions clearly support Plaintiff's position, not Defendant's.

In *Tubbs v. AdvoCare Int'l., LP*, 2017 WL 4022397, at *6 (C.D. Cal. Sept. 12, 2017), the court held that an allegation that the plaintiff "'realized none of the alleged benefits'" of the defendant's products was insufficient on its own, because the plaintiff failed to also allege "which products were consumed, when they were purchased, which representations were misleading," and how and why the representations were misleading. *Id.* at *6. All of those allegations are present here. FAC, ¶¶ 35-40; *see also id.* at ¶ 20. Similarly, in *Eckler v. Wal-Mart Stores, Inc.*, 2012 WL 5382218, *8 (S.D. Cal. Nov. 1, 2012), the court held the plaintiff could base her claims on "her own experience with Equate, rather than studies that show it doesn't deliver the joint benefits it suggests," but—like the plaintiff in *Tubbs*—she needed to allege more facts about her purchase. Neither of these decisions came anywhere close to requiring the extraneous details that Defendant argues are missing from the FAC here.

### b. Defendant's Arguments Concerning Scientific Testing And Literature Lack Merit And Rest On Factual Disputes

Defendant starts its arguments regarding testing and scientific literature with a false premise: namely, that a "scientific study plausibly suggests the defendant's product does not perform as advertised only if it (i) tested the defendant's product itself and showed it was ineffective, or (ii) proved the advertised benefits are scientifically impossible to achieve for any product with the ingredients in the defendant's products." MTD, 11:6-10. All of that is wrong for three reasons.

First, even if it were true that studies and testing must be limited to Defendant's products (it is not), that requirement is satisfied by Paragraph 31 of the FAC, which refers to Defendant's *own* studies that showed its products were no more effective than a placebo. Defendant has little to say about the allegation in Paragraph 30, other than to deny it (MTD, 15:10-11), but simply denying the allegations does not mean they are inadequately plead. *See McAdory v. M.N.S. & Assoc., LLC*, 952 F.3d 1089, 1093-94 (9th Cir. 2020) (defendant's factual denials of the allegations could not

support dismissal under Rule 12(b)(6)).[3]  Paragraph 30 also pertains to testing of the products at issue here.  FAC, ¶ 30.

  *Second*, the FAC also relies on other studies and testing concerning zinc lozenges generally, in addition to the specific zinc lozenges at issue here. See FAC, ¶¶ 23-29.  Defendant's position that Plaintiff can *only* support her claims with testing of the products at issue, rather than general scientific principles, is incorrect.  "'The falsity of the advertising claims may be established by testing, *scientific literature*, or anecdotal evidence.'"  *Bitton*, 654 Fed. Appx. at 362 (quoting *King Bio*, 107 Cal. App. 4th at 1348) (emphasis added).  Hence, in *Racies v. Quincy Bioscience, LLC*, 2016 WL 5746307, at *5 (N.D. Cal. Sept. 30, 2016), for example, the court held that the plaintiff properly supported his claims based "on a logical deduction flowing from the scientific literature," which the court held was consistent with *King Bio*.  *See also id.* ("While some of Plaintiff's evidence is not specific in the sense that it does not measure Prevagen or AQ's effect on brain functioning, *King Bio* makes clear that such testing is not required to show falsity.");  *Greenberg v. Target Corp.*, 2017 WL 9853748, at *3 (N.D. Cal. Aug. 28, 2017) (holding plaintiff sufficiently alleged falsity based on general scientific sources).

  *Third*, Defendant cites *Kwan* for the proposition that a cited study cannot plausibly support the claims unless it conclusively "proves" or "shows" the product does not or cannot work as advertised.  *See* MTD, 11:7-8; 11:11; 14:3-4.  Defendant then makes a hodge-podge of factual arguments about why it disagrees that the studies cited support Plaintiff's allegations, or why it believes they are "inconclusive."  MTD, 12:13-24; 13:13-20; 15:18.  And in a similar vein, Defendant argues its own studies and the expert studies in *Melgar* are "inconclusive" because the Court in *Melgar* never reached the ultimate conclusion about whether Zicam products are only placebos.  MTD, at 15:9-21.

---

[3] Defendant also argues that Plaintiff must describe Defendant's own studies "with particularity," despite the fact that Defendant already knows what the studies show.  MTD, 16:1-4.  Plaintiff refrained from doing so because of the studies' confidential nature, but if Defendant really wants them to be publicized, then Plaintiff can do that in an amended complaint.

Defendant fails to disclose that it is rehashing arguments that it (and its same counsel here) unsuccessfully made before in *Finnegan v. Church & Dwight Co., Inc.*, 2018 WL 10345328, at *2 (N.D. Cal. Jan. 18, 2018).  In that case, the court strongly rejected the position Defendant advances here, explaining,

> "Nothing in [*Kwan*], however, even remotely suggests that a plaintiff in a false advertising action must support his or her claims with irrefutable scientific evidence in order to survive a motion to dismiss. The [*Kwan*] court affirmed that it is the plaintiff's burden to allege facts supporting his or her contentions that a given claim is false or misleading. .... It did not impose a requirement that the alleged facts must be verified with supporting documentation at the pleading stage.

*Id.*  And, as Judge Chhabria similarly held,  "at the motion to dismiss stage, complaints need not 'show' or 'establish' anything," and thus "whether the studies cited in the complaint definitively prove [Plaintiffs'] claims is not a dispute susceptible to resolution on a motion to dismiss." *Locklin*, 2022 WL 867248, at *4.

It also is crystal clear that Defendant's arguments that the studies cited in the FAC do not support Plaintiff's claims rest on factual disputes that cannot be resolved on a Rule 12(b)(6) motion.  For example, Defendant argues that "critically," the Macknin and Turner studies cited in Paragraphs 26 and 27 of the FAC "*note that the efficacy of zinc lozenges depends on factors such as zinc dosage and zinc ion availability.*"  MTD, 5:1-2 (emphasis in original).  But Defendant misread the Turner study discussing the correlation between efficacy and zinc ion availability, because the paragraph Defendant cites concludes by noting that the hypothesis cited by Defendant "was not supported by our study."  MTD, Ex. 2, at p. 6.  More to the point, whether the zinc dosage and zinc ion availability are high enough in Zicam products to produce efficacious results different from those in the Turner and Macknin studies is a question for expert discovery later.

### B.  Plaintiff Sufficiently Alleges Claims For Equitable Relief

Defendant cites *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020), for the proposition that CLRA, FAL, and UCL claims seeking restitution and/or injunctive relief should be dismissed because Plaintiff has an adequate remedy at law.  MTD, 17:10-5.  As shown more fully below: (1) *Sonner* does not support dismissal of equitable claims at the pleading stage;

(2) *Sonner* does not preclude injunctive relief; (3) the CLRA is not limited to equitable relief; and (4) there are several additional reasons that *Sonner* does not support dismissal of the unjust enrichment claim—apart from the fact that Zicam did not seek dismissal of that claim in its brief.

**1. *Sonner* Does Not Support Dismissal Of Equitable Claims At The Pleading Stage.**

The lower court in *Sonner* dismissed the equitable claims because, shortly before trial and after more than four years of litigation, the plaintiff voluntarily "dropped her sole damages claim and sought the same amount as restitution claims, presumably to pursue a bench trial and avoid having to persuade a jury to award the amount in damages." *Lopez v. Cequel Comms., LLC*, 2021 WL 4476831, at *2 (E.D. Cal. Sept. 30, 2021); *see also Sonner*, 971 F.3d at 837-38 (describing how plaintiff's faulty trial tactics led to the dismissal). "*Sonner* teaches that a plaintiff, on the eve of trial, cannot create an inadequacy of a legal remedy by eliminating its availability by taking volitional action." *Nacarino v. Chobani, LLC*, 2022 WL 344966, at *9 (N.D. Cal. Feb. 4, 2022). "Similarly, where the plaintiff had an adequate legal remedy but forsook it (e.g. by failure to abide by the statute of limitations), the plaintiff cannot be said to have been without an adequate legal remedy." *Id.*

Numerous decisions after *Sonner* show that the situation is very different where the defendant challenges equitable claims on a motion to dismiss. "*Sonner* has limited applicability to the pleading stage because it pertained to circumstances in which a plaintiff dropped all damages claims on the eve of trial" and as such, "provides limited guidance for pleading claims for legal and equitable relief." *Jeong v. Nexo Fin. LLC*, 2022 WL 174236, at *27 (N.D. Cal. Jan. 19, 2022). In so finding, the *Jeong* court cited other cases where courts "d[id] not consider *Sonner* to impose strict requirements at the pleading stage." *Id.*

Moreover, there are two related rules concerning pleading equitable claims or relief that *Sonner* did not purport to overturn. <u>First</u>, the Ninth Circuit holds that by its plain terms, Rule 8 permits a plaintiff to pursue both equitable and legal remedies in the alternative, at least at the pleading stage. *Moyle v. Liberty Mut. Retirement Ben. Plan.*, 823 F.3d 948, 962 (9th Cir. 2016)

(permitting a plaintiff to pursue both legal and equitable relief "adheres to the Federal Rules of Civil Procedure [8(a)(3)]"); *see also Robinson v. Unilever United States, Inc.*, 2019 WL 2067941, at *5 (C.D. Cal. Mar. 25, 2019) (following *Moyle* for proposition that equitable relief may be sought as an alternative to legal remedies).  Indeed, before *Sonner*, this Court held that "there is no question" that a plaintiff can pursue equitable relief "as an alternative to legal remedies … should those legal remedies be unavailing."  *Cabrales v. Castle & Cook Mortg., LLC*, 2015 WL 3731552, at *4 (E.D. Cal. June 12, 2015) (England, J.).

    Second, a court may not construe a plaintiff's legal claim as an admission that she has an adequate remedy at law foreclosing an alternative equitable claim.  *See*, *e.g.*, *Molsbergen v. U.S.*, 757 F.2d 1016, 1019 (9th Cir. 1985) ("Clearly, a policy which permits one claim to be invoked as an admission against an alternative or inconsistent claim would significantly restrict, if not eliminate, the freedom to plead inconsistent claims provided by Rule 8(e)(2). Thus, courts have been reluctant to permit one pleading to be read as a judicial or evidentiary admission against an alternative or inconsistent pleading."); *see also McCalden v. Cal. Library Ass'n,* 955 F.2d 1214, 1219 (9th Cir.1990) (following *Molsbergen*).

    If *Sonner* intended to overturn these longstanding rules, it surely would have said so, but it did not.  Numerous courts have determined that *Sonner* did not change these two rules, and that permitting equitable claims to go forward at the pleading stage, despite the purported existence of adequate legal remedies, is "consistent with Federal Rule of Civil Procedure 8 which allows for pleadings in the alternative."  *Nacarino*, 2022 WL 344966 at *10.  Similarly, "putting aside *Sonner's* unique procedural posture, the case did not purport to disturb the well-established rule that equitable and damages claims may co-exist when they are based on different theories."  *Brown v. Nature's Path Foods*, 2022 WL 717816, at *6 n.5 (N.D. Cal. Mar. 10, 2022); *see also Yeomans v. World Fin. Grp. Ins. Agency, Inc.*, 2022 WL 844152, at *7-8 (N.D. Cal. Mar. 22, 2022) (*Sonner* did not prevent plaintiffs from seeking restitution in the alternative to legal claims at the pleading stage); *Coleman v. Mondelez Int'l. Inc.*, 554 F. Supp. 3d 1055, 1065 (C.D. Cal. July 2021) (same); *Rothman v. Equinox Holdings, Inc.*, 2021 WL 1627490, at *12 (C.D. Cal. Apr. 27, 2021) (same);

*Krause-Pettai v. Unilever United States, Inc.*, 2021 WL 1597931, at *4 (S.D. Cal. Apr. 23, 2021) (same).

### 2. *Sonner* Does Not Preclude Injunctive Relief

The *Sonner* court specifically noted that "[i]njunctive relief [was] not at issue" (*Sonner*, 971 F.3d at 842), and numerous courts have determined that *Sonner* does not support dismissal of requests for injunctive relief intended to prevent future harm. *See Gross v. Vilore Foods Co., Inc.*, 2020 WL 6319131, at *3 (S.D. Cal. Oct. 28, 2020) ("*Sonner* is distinguishable because it involved only a request for restitution, not a request for injunctive relief, which is part of the remedy Plaintiffs request here."). For example, in *Roper v. Big Heart Pet Brands, Inc.*, 2020 WL 7769819, at *9 (E.D. Cal. Dec. 30, 2020), Judge Drozd held that allegations that the plaintiff "and other future purchasers will continue to be misled" by the defendant's false advertising sufficiently established the absence of an adequate remedy for future harm, and thus denied dismissal of the request for injunctive relief under *Sonner*. *See also Coleman*, 554 F. Supp. 3d at 1065 (following *Roper* and denying motion to dismiss request for injunctive relief). Here, similar allegations are contained in Paragraph 41 of the FAC. Moreover, *Sonner* did not address, much less overturn, the standing requirements for injunctive relief set forth in *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018). As set forth in Section III.C.2 below, Plaintiff has standing to pursue injunctive relief.

### 3. *Sonner* Does Not Support Dismissal Of The CLRA Claim

The CLRA permits and action for *both* damages and equitable restitution (Cal. Civ. Code 1780(a)) and, as noted above, the fact that a plaintiff seeks both remedies under the CLRA cannot be construed as an admission that the plaintiff has an adequate remedy at law. *Cf. Molsbergen*, 757 F.2d at 1019. Defendant only argues for dismissal of the CLRA claim to the extent that Plaintiff seeks restitution under that statute. *See* MTD, 17:11. Hence, even if the Court agrees with Defendant that Plaintiff cannot seek restitution, there is no legal basis to dismiss the CLRA claim in its entirety.

### 4. *Sonner* Does Not Support Dismissal Of The Unjust Enrichment Claim For Several Additional Reasons

As a preliminary matter, in its brief, Defendant only seeks dismissal of the claims under the CLRA, UCL, and FAL, but does not state that it seeks dismissal of the unjust enrichment claim under *Sonner*. *See* MTD, 17:10-18:5. Defendant cannot seek dismissal of the unjust enrichment claim for the first time on reply. *See Sanchez v. Cty. Of Sacramento*, 2022 WL 866057, at *9 n.8 (E.D. Cal. Mar. 23, 2022) (England, J.) ("the Court need not consider arguments raised for the first time in a reply brief").

There are two other reasons why Defendant's adequate-remedy-at-law arguments fail with respect to the claim for unjust enrichment, in addition to those already stated above concerning *Sonner*. First, California and federal common law follow the Restatement, including the Restatement of Restitution.[4] Under the Restatement, "[a] claimant otherwise entitled to a remedy for unjust enrichment, including a remedy originating in equity, need not demonstrate the inadequacy of available remedies at law." Restatement (Third) of Restitution ("Restatement"), § 4(2).

Second, in Paragraph 128 of the FAC, Plaintiff alleges the lack of an adequate remedy at law with respect to her unjust enrichment claim, and those allegations are sufficient under *In re California Gasoline Spot Mkt. Antitrust Litig.*, 2021 WL 1176645 (N.D. Cal. Mar. 29, 2021) ("*California Gasoline*"). Specifically, in *California Gasoline*, the plaintiffs sought "'non-restitutionary disgorgement of the financial profits that Defendants obtained as a result of their unjust conduct,'" and they "affirmatively allege[d] there was no alternative remedy at law for the claim." *Id.* at *8 (quoting complaint). The court held that was sufficient to distinguish *Sonner*

---

[4] *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 4501223, at *7 (N.D. Cal. Sept. 28, 2011) ("California courts have long relied on the American Law Institute's Restatements for guidance."); *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1487 (2014) (following Restatement (Third) of Restitution); *Booth-Kelly Lumber Co. v. Southern Pac. Co.*, 183 F.2d 902, 907, 910 (9th Cir. 1950) (following Restatement of Restitution); *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Pathology Labs. of Arkansas, P.A.*, 71 F.3d 1251, 1254 (7th Cir. 1995) ("Federal common law tracks the consensus of states, which have developed the law of restitution … We therefore turn to the *Restatement of Restitution* (1937), which summarizes the dominant themes of state common law.") (internal citation omitted).

because non-restitutionary disgorgement is not the equivalent of legal damages.  *Id.*  Here, Paragraph 128 of the FAC contains allegations that are nearly identical to those that passed muster in *California Gasoline*.  *See* FAC, ¶ 128.

### C.  The FAC Should Survive Dismissal under Rule 12(b)(1)

#### 1.  As in *Melgar*, The Putative Ten-State Subclass Presents No Standing Issues

Defendant argues that "Plaintiff purports to bring claims under the laws of Delaware, the District of Columbia, Kansas, Missouri, New Jersey, Ohio, Utah, Virginia, and West Virginia," MTD at 18, but "Plaintiff has [] alleged no basis for standing to bring her non-California claims and these claims should be dismissed under Rule 12(b)(1)."  As a preliminary matter, this Court certified the same multi-state express warranty subclass in the *Melgar* case, even though that case did not involve a plaintiff from each of the subject states.  *Melgar*, 2016 WL 1267870, at *6.

Equally important, Defendant conflates "the constitutional issue of standing . . . with Rule 23 class action requirements."  *In re Hydroxycut Mktg. and Sales Practices Litig.*, 801 F. Supp. 2d 993, 1005 (S.D. Cal. 2011).  Plaintiff here **does not** seek to "bring claims under the laws" of these nine non-California states, as Defendant wrongly claims.  Rather, Plaintiff brings her own claim under the laws of California and "seeks to represent a ten-state express warranty subclass **whose members** have claims under the laws of the other nine states.  Plaintiff chose ten states for the express warranty subclass because the express warranty laws of those states are sufficiently similar to support the predominance requirement.  *Cf. Melgar*, 2016 WL 1267870 at *2.

As courts in this circuit have held, "whether a named plaintiff can represent class members whose claims arise under the laws of different states does not appear to be a question of standing [because a class representative] does not [her]self seek to raise a claim under the laws of a different state; rather, [she] seeks to represent a class member who can raise such a claim."  *Patterson v. RW Direct, Inc.*, 2018 WL 6106379, at *1 (N.D. Cal. Nov. 21, 2018); *see also Alvarez v. NBTY, Inc.*, 2017 WL 6059159, at *8 (S.D. Cal. Dec. 6, 2017) ("Thus, this secondary standing analysis relating to Plaintiff Alvarez's standing as it relates to multi-state class is best left for class certification and after further discovery.").

Whether different law will need to be applied at all is a question of choice of law analysis. If the laws of these states present a "false conflict," then identical law can be applied to each members' claims, regardless of their state of residence.  *See Forsyth v. Cessna Aircraft Co.*, 520 F.2d 608, 611 (9th Cir. 1975) (noting that "if a false conflict exists, the law of the forum should apply").  To the extent the applicable substantive laws of these states differ at all, such a difference implicates Rule 23's uniformity test, not Article III standing.  Such questions are appropriately addressed at class certification, not on a motion to dismiss.

Moreover, the above analysis is consistent with *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015), where the Ninth Circuit warned against "conflat[ing] standing and class certification." *Id*. at 1262.  As a result, "representative parties who have a direct and substantial interest have standing," and "the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation." *Id.*  Thus, courts also have followed *Melendres* when rejecting the same standing argument Defendant advances here.  *See*, *e.g.*, *Staley v. Gilead Scis., Inc.*, 2020 WL 1032320, at *33 (N.D. Cal. Mar. 3, 2020) (holding that "*Melendres* was dispositive" with respect to the issue of whether named plaintiffs could pursue claims under the laws of states where they did not reside); *Kutza v. Williams Sonoma*, *Inc.*, 2018 WL 5886611, at *2-3 (N.D. Cal. Nov. 9, 2019) (following *Melendres* when rejecting the same argument Defendant makes here).

### 2.  Under *Davidson*, Plaintiff Has Standing to Seek Injunctive Relief

Defendant argues that "there is no risk that the Zicam Cold Reduction Claims could deceive Plaintiff again in the future and she lacks standing to seek injunctive relief."  MTD at 20.  This argument directly contradicts Plaintiff's well-pled allegation that "Plaintiff would purchase Zicam Pre-Cold Products again in the future if the products were more than just a placebo" but "would have no way to know if the product labeling was in fact true."  FAC ¶ 41.

Defendant's argument also is contrary to the controlling decision in *Davidson*, 889 F.3d at 967-72, and the allegations here are modeled on those that the Ninth Circuit held were sufficient to reverse dismissal in that case.  Following *Davidson*, courts routinely find standing in cases with

similar pleadings. *See, e.g., Brown v. Van's Int'l Foods, Inc.*, 2022 WL 1471454, at *11 (N.D. Cal. May 10, 2022) ("Because I can fairly interpret the complaint as alleging that Brown would purchase the products again in the future if they were not misleadingly labeled, Brown has sufficiently alleged standing to seek injunctive relief"); *Dailey v. A&W Concentrate Co.*, 519 F. Supp. 3d 668, 671 (N.D. Cal. 2021) ("[H]e has sufficiently alleged standing to seek injunctive relief by alleging that he would purchase the products again in the future if they were not deceptively labeled."); *Nacarino*, 2022 WL 344966 at *11 (standing for injunctive relief existed where plaintiff alleged that "she cannot rely on the Product's advertising or labeling, and that she will not purchase the Product again despite her desire to"). In short, adopting Defendant's argument concerning injunctive relief would be reversible error under *Davidson*.

## IV. CONCLUSION

The motion to dismiss should be denied in its entirety. If the Court concludes the pleadings are deficient in any respect, Plaintiff respectfully requests leave to amend to cure any such deficiencies. *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017) (holding lower court erred in denying leave to amend after dismissing first amended complaint).

Dated: June 22, 2022

**BURSOR & FISHER, P.A.**

By:      */s/ Joel D. Smith*
       Joel D. Smith

L. Timothy Fisher (State Bar No. 191626)
Joel Smith (State Bar No. 244902)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
E-Mail: ltfisher@bursor.com
        jsmith@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
E-Mail: scott@bursor.com

*Attorneys for Plaintiff*